**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

**UNITED STATES OF AMERICA**,

v.

**RAYMOND LEE HENDRIX and**
**WILLIE HENDERSON**,                                    Case No. 7:14-CR-51

                Defendants.

**ORDER**

The Court held a restitution hearing in this case on November 19, 2015.

The Government asks the Court to order Defendant Raymond Lee Hendrix to

pay $206,580 (Doc. 126-6, p. 1) and Defendant Willie Henderson to pay

$450,720 (Doc. 126-5, p. 1), based on a rate of $28 per day, per dog.  Eleven

dogs were seized from the home of Mr. Hendrix, and twenty-four dogs were

seized from the home of Mr. Henderson.  Following their seizure, Defendants'

dogs were cared for by the Humane Society of the United States for 663 days.[1]

(Doc. 84-2, p. 1).  Defendants object to the Government's proposed restitution

---

[1] The Humane Society's estimate of the costs incurred in caring for Defendants'
dogs is allegedly based on a rate of $28 per day, per dog.  Mr. Hendrix is
responsible for eleven dogs that were seized from his home.  These dogs were in
the custody of the Humane Society from August 23, 2013 until Mr. Hendrix
released his ownership rights on June 19, 2015, for a total of 665 days.  Mr.
Henderson's twenty-four dogs were also in the custody of the Humane Society
for 665 days.  Assuming the Humane Society correctly calculated the cost of
keeping the dogs at $28 per day, per dog, the total amount of restitution
requested should have been $204,820 from Mr. Hendrix and $446,880 from Mr.
Henderson.

amount to the extent that it does not relate to the care of the dogs seized from their properties, and on the basis that the Humane Society is not a "victim" of the underlying crime for restitution purposes.[2]  For the reasons discussed herein, Mr. Hendrix is ordered to pay $31,515 in restitution to the Humane Society, and Mr. Henderson is ordered to pay $68,760 in restitution to the Humane Society.

## I.    FACTUAL BACKGROUND

On June 25, 2015, Defendants both pled guilty to Conspiracy to Travel in Interstate Commerce in Aid of Unlawful Activities and to Sponsor and Exhibit a Dog in an Animal Fighting Venture, in violation of 18 U.S.C. § 371 in connection with 18 U.S.C. § 1952 and 7 U.S.C. § 2156.  (Doc. 74, p. 2; Doc. 76, p. 2).  Mr. Henderson also pled guilty to Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2).  (Doc. 76, p. 3).  In their respective plea agreements, Defendants agreed to pay restitution for the housing, upkeep, and medical care of their dogs seized in the course of the underlying investigation.  (Doc. 74, p. 4; Doc. 76, p. 4).  A sentencing hearing was held on September 23, 2015, and Mr. Hendrix was sentenced to a prison term of sixteen months, followed by a three-year term of supervised release. (Doc. 105, p. 2–3).  Mr. Henderson was sentenced to sixty months imprisonment, followed by three years of supervised release.  (Doc. 107, p. 2–3).  At that time, the Court scheduled a hearing to determine restitution for November 19, 2015.

---

[2] Although Mr. Henderson did not file any objection to the Government's proposed restitution, he joined in Mr. Hendrix's objections at the restitution hearing on November 19, 2015.

At the restitution hearing, the Government explained that on August 23, 2013, eleven dogs were seized from Mr. Hendrix and twenty-four dogs were seized from Mr. Henderson.  These dogs were immediately placed in the care of the Humane Society.  The dogs were transported to a facility in Jacksonville, Florida, which was established in order to care for 141 of the dogs seized in connection with a multi-state dog fighting investigation.  Defendants' dogs remained at the Jacksonville facility until they released their ownership interest in the dogs on June 19, 2015.  At that point, the Humane Society began to place the dogs in new homes.

The Government argues that Mr. Hendrix should be ordered to pay $206,580 in restitution and Mr. Henderson should be ordered to pay $450,720 in restitution.  In support of this figure, the Government presented a spreadsheet, prepared by the Humane Society, detailing the costs incurred by the Humane Society for the "housing, daily care and medical care" of all 141 animals maintained at the Jacksonville facility.  The expense spreadsheet includes the following categories: Animal Care Supplies – Feed; Animal Care Supplies – Other; Computer Related Expenses; Consultants & Services; Dues & Subscriptions; Equipment; Equipment Lease/Rental; Medical Supplies; Office Supplies; Postage, Courier, etc.; Printing & Composition; Prize/Award Payments; R&M Equipment; Telephone; Temporary Staffing; and Travel.  The costs associated with these different expenditures are outlined for the time period that Defendants' dogs were in the custody of the Humane Society but had not yet

3

been surrendered.  The Humane Society spent a total of $2,635,967 caring for the 141 dogs at the Jacksonville facility between August 23, 2013 and June 19, 2015.  In order to calculate the amount attributable to Defendants' dogs, the Government divided the total expenditures by 141 dogs, arriving at a daily cost of $28 per day, per dog.  The Government then multiplied $28 by the 663 days during which Defendants' dogs remained in the care of the Humane Society. Finally, the Government multiplied this amount by the number of dogs seized from each defendant.

Defendants object to the Government's restitution calculation.  They first argue that restitution should only be ordered in response to actual harm caused as a result of the crime committed, and should not include charges relating to the general welfare of the animals while in the custody of the Humane Society. Second, Defendants object to the lack of specificity of the costs included in the spreadsheet.  Defendants argue that it is unclear from the spreadsheet what costs are attributable to their dogs, as opposed to the other 106 dogs that were housed at the facility.  Third, Defendants argue that the Humane Society is not a victim for restitution purposes, and therefore it is not clear whether any restitution should be awarded.

The Court will first discuss the legal justification for awarding restitution in this case.  Next, the Court will examine the appropriate estimate of the per day, per dog cost for which Defendants should be held responsible.  Finally, the Court will determine the date on which Defendants' responsibility for these costs arose.

4

## II.   ANALYSIS

Restitution is mandatory for crimes of violence when there is a victim of the offense.   18 U.S.C. § 3663A(a)(1), (c)(1).   The mandatory restitution statute contemplates two types of offenses and corresponding victims: (1) offenses resulting in damage to property of a victim and (2) offenses resulting in bodily injury to a victim.   18 U.S.C. § 3663A(b).   A victim is "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered."   18 U.S.C. § 3663A(a)(2).   When restitution is more appropriately paid to persons other than the victim of the offense, the statute mandates that the Court order restitution as agreed to by the parties in a plea agreement.   18 U.S.C. § 3663A(a)(3).

This case involves an offense that resulted in damage to Defendants' property, but that was perpetrated by Defendants.   Consequently, it is not clear whether there is a "victim" of the offense that is due restitution under the mandatory restitution statute.   Nevertheless, Defendants agreed to pay restitution in their respective plea agreements for the housing, upkeep, and medical care of their dogs while at the Humane Society.   Therefore, restitution in this case is ordered pursuant to 18 U.S.C. § 3663A(a)(3).

### A.   Amount of Restitution to be Paid

The Government bears the burden of proving the amount of restitution owed beyond a preponderance of the evidence.   United States v. Bane, 720 F.3d 818, 827 (11th Cir. 2013) (citing 18 U.S.C. § 3663A(c)).   In presenting evidence

5

on restitution, the Government "must show not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal connection between the conduct and the loss is not too attenuated (either factually or temporally)." United States v. Robertson, 493 F.3d 1322, 1334 (11th Cir. 2007) (internal citation omitted).   Where a precise calculation of restitution is not possible, the Court need only make a reasonable estimate of the loss, given the available information. United States v. Futrell, 209 F.3d 1286, 1290 (11th Cir. 2000) (internal citation omitted).

Here, the Government offers $28 per dog, per day as a "reasonable estimate" of the amount the Court should order Defendants to pay in restitution. Defendants "[have] no objection to paying reasonable fees associated with 'housing, upkeep and medical care' of the dogs," but argue that "many of the expenses that the Government appears to be claiming as restitution do not relate to housing, upkeep or medical care of the animals." (Doc. 128, p. 1–2) (internal citations omitted).  Specifically, Defendants point out that "travel costs, car rental costs, parking costs, gasoline, taxis, meal costs, lodging costs, costs for consultants, volunteer reimbursements, baggage fees, office supplies, postage, equipment, computer expenses, printing costs," and more are included in the Government's calculation of proposed restitution.  (Doc. 128, p. 2) (internal quotation marks omitted).

In a previous dog fighting case, United States v. Jackson et al., No. 1:14-CR-00014-WLS-TQL, out of the Middle District of Georgia, Albany Division, the

6

Government asked for and was awarded $72,377.84 in restitution, to be distributed between the Tift County Animal Shelter and the Hello Bully rescue agency.  There, the Tift County Animal Shelter requested $15 per day, per dog, their standard boarding fee.  The $15 per day, per dog covered the cost of housing and medical care for the dogs that were seized and kept at the Tift County Animal Shelter.  One dog seized had severe damage to his muzzle that required several surgeries and other treatments paid for by the Hello Bully rescue agency.  These costs were itemized in receipts presented by the Government.  Both the Tift County Animal Shelter and Hello Bully were fully compensated for the costs incurred in caring for the animals.

In this case, the Court finds that $28 per day, per dog is an unreasonably high estimate of what Defendants should be ordered to pay for the housing, upkeep and medical care of their dogs.  The Government is unable to provide evidence of costs incurred specifically due to Defendants' dogs, as opposed to all of the other dogs that were cared for at the Jacksonville facility.  Further, the amount requested by the Government is based on a calculation that includes costs unrelated to the care of the dogs, including, among other things, office supplies, equipment used to set up the Jacksonville facility, and travel fees for flying in volunteers from out of state.  The Court finds that these costs are not sufficiently related to the housing, upkeep and medical care of Defendants' dogs.  As a result, the Government's suggested restitution of $28 per day, per dog is unreasonably high.

7

The Court finds that $15 per day, per dog is a more reasonable estimate of the harm caused by Defendants' conduct.  The Court bases this estimate on the Excel spreadsheet, provided by the Humane Society, of costs incurred in this case, and on the amount of restitution ordered by the Court in United States v. Jackson et al., discussed *supra*, pages 6–7.

### B.   Date from Which Restitution Should Be Calculated

The Court must next address the date when Defendants' responsibility to pay restitution for the "housing, upkeep and medical care of all dogs seized" arose.  The Government asks the Court to order restitution based on the costs incurred by the Humane Society from the day the dogs were seized—August 23, 2013—until the day the ownership interest in the dogs was released by Defendants—June 19, 2015.

The Court disagrees with the Government's suggestion that Defendants should be responsible for costs that arose beginning August 23, 2013. Defendants were not indicted in the Middle District of Georgia until December 10, 2014.  The Court holds that Defendants' responsibility for the costs incurred by the Humane Society arose on the date of their indictment.  Prior to that date, Defendants had not been informed of their right to surrender their ownership interest in the dogs to the Humane Society, thereby relieving them of the responsibility for the costs incurred in caring for the dogs.  Accordingly, Defendants are responsible for the costs associated with the housing, upkeep,

and medical care of their dogs incurred between December 10, 2014 and June 19, 2015, or 191 days.

## III.   CONCLUSION

For the foregoing reasons, pursuant to 18 U.S.C. § 3663A(a)(3), the Court orders Defendants to pay restitution at a rate of $15 per day, per dog, for 191 days of care.  Mr. Hendrix must pay $31,515 in restitution to the Humane Society for his eleven dogs.   Mr. Henderson must pay $68,760 in restitution to the Humane Society for his twenty-four dogs.

**SO ORDERED**, this the 10th day of December, 2015.

*/s/ Hugh Lawson*                          
**HUGH LAWSON, SENIOR JUDGE**

les